UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

North Star Mutual Insurance Company,

Plaintiff,

vs. ORDER

Zurich Insurance Company, Westrope & Associates, and Legend Insurance Services,

Defendants. Civ. No. 01-837 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 22nd day of April, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 18 U.S.C. §636(c), upon the Motion of the Plaintiff North Star Mutual Insurance Company ("North Star") for an Extension of Time to Disclose Expert Opinions, and upon the Motions of the Defendants Zurich Insurance Company ("Zurich"), and Westrope & Associates ("Westrope"), for Summary Judgment.

A Hearing on the Motions was conducted on December 12, 2002, at which time, North Star appeared by Daniel L. Giles, Esq., Zurich

APR 2 2 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

59

appeared by Peter G. Van Bergen, Esq., and Westrope appeared by Paul D. Reuvers, Esq.[1]

For the reasons which follow, we grant both of the Defendants' Motions for Summary Judgment, and we deny North Star's Motion for an Extension of Time for Disclosure of Experts' Opinions.

## II. Factual and Procedural History

This case arises out of a fire damage loss, which occurred on September 18, 2002, at Schneck Dairies, Inc. ("Schneck"). At the time of the loss, Schneck maintained insurance coverage with North Star, which paid the entirety of the fire loss claim. Thereafter, North Star commenced this action, which seeks a declaration that Schneck was insured by Zurich for the loss, that North Star was not bound to pay for that loss, such that North Star is entitled to reimbursement, from Zurich, for the amount it paid on the loss. Zurich moves for Summary Judgment on the grounds that it was never bound to the Schneck risk. In the alternative, North Star alleges that Westrope negligently failed to properly place replacement coverage, with Zurich, for the Schneck loss, and therefore, that Westrope must reimburse North Star. Westrope moves for Summary Judgment on the ground that the Plaintiff cannot, as a matter of law, state a claim of negligence against it.

[1]No appearance was made by, or on behalf of, the Defendant Legend Insurance Services.

Schneck's insurance agent was William Werlinger ("Werlinger"), who was employed by the Defendant Legend Insurance Services ("Legend"). Werlinger had worked for Legend since 1998, and before that time, he had owned his own insurance agency for twenty years. When Schenck came to Werlinger, he placed insurance coverage for it with the Auto Owners Insurance Company ("AOIC"). However, at some point in 2000, AOIC contacted Werlinger and asked that it be removed from the Schneck risk. As a result, in late July, or early August of 2000, Werlinger began seeking quotations from other insurers. He filled out applications for quotations with both North Star, and with Westrope. Westrope is an independent, wholesale insurance broker, which submits insurance applications to several companies, including Zurich, and then serves policies that are sold as a result of those submissions. On August 15, 2000, Werlinger received pricing information from North Star. He also received pricing information from Zurich, via Tamara Owen ("Owen"), who was his contact at Westrope. Since North Star's quote was lower, Werlinger bound coverage for Schneck's loss with North Star, on September 1, 2000.

However, on September 7, 2000, after further reviewing the application, North Star asked Werlinger to find a different insurer for the Schneck risk, having determined that it did not wish to accept that exposure. North Star agreed, however, to continue its

coverage through September 27, 2000. Upon receiving that notice, Werlinger contacted Owen and inquired about coverage by Zurich, which he hoped to bind as soon as possible. On September 8, 2000, Owen sent Werlinger a price quotation from Zurich. Werlinger contacted Owen on September 14, 2002, and claims that, during that conversation, he told Owen that he needed immediate coverage, and asked her to bind coverage to Zurich on either September 1, 2000, or September 14, 2000, and that Owen stated that she would "take care of it." Werlinger claims that he understood Owen to mean that coverage by Zurich would be bound on one of these two dates, although he admits that Owen never expressly stated that she would bind coverage, that she had bound coverage, or that she had the authority to bind coverage for Zurich.

Instead, Werlinger asserts that Owen never told him that she did not have authority to bind coverage. Owen recalls the conversation differently, and claims that she informed Werlinger that she needed a written order, and additional information, in order to request that Zurich bind coverage. Westrope admits that its employees have no authority to bind Zurich in coverage, or to backdate coverage.

On September 18, 2000, Werlinger mailed a letter to Westrope, again asking it to bind coverage with Zurich for the Schneck risk. The letter did not reference any binding dates, and Werlinger

claims that this was due to his belief that Owen had already assured him that coverage would be bound on September 1, or 14, 2000. On that same day -- September 18, 2000 -- the fire occurred at the Schneck property. On September 19, 2000, after Werlinger received notice of the fire, he faxed a copy of his correspondence of September 18, 2000, to Owen, after altering it, by adding the wording "Effective date of policy: September 18, 2000." Werlinger claims that he added this notation because he had not heard from Owen, and wanted to insure that the policy did not have an effective date any later than September 18, 2000. Werlinger did not, however, disclose that there had been any damage to the property. On September 19, 2000, after receiving this fax from Werlinger, Owen sent an electronic message to Zurich, requesting that it bind coverage. On September 21, 2000, Owen received notice of the fire damage, and promptly called Zurich to inform it of the loss. Zurich had not, at that time, replied to Owen's e-mail.

## III. Discussion

### A. The Plaintiff's Motion to Extend Expert Disclosure Deadline.

Under the Pretrial Order, North Star was required to disclose its expert witnesses, and their reports, by no later than August 1, 2002. On May 31, 2002, North Star disclosed Jon Rongstad ("Rongstad") as an expert but, as of the date of the Hearing on

this Motion, North Star had not produced his report. As a result, North Star moved for leave to then disclose that opinion, claiming that such a late disclosure would in no way prejudice the Defendants. Both Westrope and Zurich oppose any extension.

1. Standard or Review. The "good cause" standard of Rule 16(b), Federal Rules of Civil Procedure, provides the framework for our consideration of a Motion to amend the Scheduling Order, when the deadline sought to be extended, has already passed. We have frequently stated:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1983 Amendment; see also Julian v. Equifax Check Services, Inc. 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mention, therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631-32 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581 (D. Minn. 1999); see also, Fabio v.

Credit Bureau of Hutchinson, Inc., 210 F.R.D. 688, 691 (D. Minn. 2002).

Accordingly, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alhom v. American Steamship Co., 167 F.R.D. 75, 79 (D. Minn. 1996), quoting Rouse v. Farmers State Bank of Jewell, 866 F.Supp. 1191, 1199 (N.D. Iowa 1994).

2. Legal Analysis. Although North Star disclosed Rongstad as its expert, it failed to serve his expert report, as it was required to do, by the deadline of August 1, 2002, that was imposed by our Pretrial Order. Rule 16, Federal Rules of Civil Procedure, "permits the district court * * * to impose sanctions on a party for failing to meet a deadline." Firefigthers' Institute for Racial Equality v. City of St. Louis, 220 F.3d 898, 902 (8th Cir. 2000). In the context of a failure to meet the expert disclosure deadline, "Rule 16 is buttressed by the sanctions imposed by Rule 37(c)(1), Federal Rules of Civil Procedure, which requires exclusion of an expert's opinion if disclosures are not timely made." Engleson v. Little Falls Area Chamber of Commerce, 210 F.R.D. 667, 669 (D. Minn. 2002).[2] However, as we have previously noted:

---

[2]In pertinent part, Rule 37(c)(1) provides as follows:

> A party that without substantial justification fails to disclose information required by Rule

(continued...)

> "While sanctions under Rule 37(c)(1) are mandatory * * * exclusion of evidence should not apply if the offending party's failure was 'substantially justified,' or if the failure was 'harmless.'" Transclean Corp. v. Bridgewood Services, Inc., [77 F. Supp.2d 1045,] 1064 [(D. Minn. 1999)]. These exceptions to Rule 37(c)(1)'s imperative serve "to avoid unduly harsh penalties" that may result from an inflexible application of the Rule. Id., citing Rule 37(c), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1993 Amendments. In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court should consider the following four factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice. See, Transclean Corp. v. Bridgewood Services, Inc., supra at 1064, citing Citizens Bank v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994); Millen v. Mayo Foundation, 170 F.R.D. 462, 465 (D. Minn. 1996); see also, Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 744 (Fed. Cir. 1997).

<u>Transclean Corp. v. Bridgewood Servs., Inc.</u>, 101 F. Supp.2d 788, 795-96 (D. Minn. 2000); see also, <u>Engleson v. Little Falls Area Chamber of Commerce</u>, supra at 669.

---

(...continued)

> 26(A) or 26(e)(1) * * * is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Thus, while, under the governing law, we could exclude Rongstad's opinion as untimely, as the Defendants suggest, if North Star's "failure to meet a deadline was either harmless or substantially justified," we need not. Firefighters' Institute For Racial Equality v. City of St. Louis, supra at 902. We conclude, however, that neither of those exclusions apply, and that the Plaintiff's expert report should be excluded.

Initially, we find that North Star's failure to disclose Rongstad's opinion was not substantially justified, as the only cause offered by North Star is its assertion that it confused the pretrial deadlines in this case, with those in another matter. Even if such confusion could have provided some cause for a short delay, the expert opinion disclosure deadline in this action was on August 1, 2002, and North Star did not file its Motion to be relieved from that deadline, until December 2, 2002 -- four full months later. Based on that extent of delay, we are unable to conclude that North Star's failure to disclose its expert report was due to any other cause than its carelessness, inadvertence, or inattention. As we have said, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Scheidecker v. Arvig Enterprises, Inc., supra at 631-32, quoting Johnson v. Mammoth Recreations, Inc., supra at 609. Accordingly, we find that

North Star's failure to disclose Rongstad's report was not substantially justified.

Moreover, we find that Rongstad's "expert" opinions would not be helpful to the Jury's resolution of the issues presented by this case. According to North Star, Rongstad's testimony is important, because it will explain the nature of the relationship between insurance agents, such as Legend, and insurance brokers, such as Westrope, and will "describe the customs and practices as they apply to the facts of this case." Memorandum of Law in Support of Motion to Extend Time for Disclosure of Expert's Report, at 2. North Star contends that Rongstad's expert opinion is essential to show that Westrope bound Zurich to coverage for the Schneck loss, because that determination may turn on industry custom, and practice. We have substantial doubt, however, that Rongstad's proffered testimony will be admissible under Rule 702, Federal Rules of Civil Procedure.

Rule 702, which generally governs the admissibility of expert testimony, provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable prin-

> ciples and methods, and (3) the witness has ap-plied the principles and methods reliably to the facts of the case.

Rule 702, Federal Rules of Evidence (2001).[3]

The Supreme Court has explained that "Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999), quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). Accordingly, a Court must consider both the relevance, and the reliability, of proffered expert testimony, in evaluating its admissibility. See, Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001), citing Daubert v. Merrell Dow Pharm., Inc., supra at 591-93; Bonner v. ISP Technologies, Inc., 259 F.3d 924, 929 (8th Cir. 2001); Jauregui v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999).

---

[3]Rule 703, Federal Rules of Evidence, also imposes the following restrictions on the provision of expert opinion evidence:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Rule 703, Federal Rules of Evidence (2001).

The Trial Court is charged with "a gatekeeping responsibility to 'ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.'" Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 714-15 (8th Cir. 2001), quoting Kumho Tire Co., Ltd. v. Carmichael, supra at 141. As a consequence, the Court must, "before accepting the testimony and opinion of an expert witness, * * * determin[e] whether the opinion is based upon sound, reliable theory, or whether it constitutes rank speculation." Kemp v. Tyson Seafood Group, Inc., 2000 WL 1062105 at *2 (D. Minn., July 19, 2000), citing Kumho Tire Co. v. Carmichael, supra at 141, and Daubert v. Merrell Dow Pharm., Inc., supra at 589-90. If that testimony is speculative, it does not constitute "competent proof," and cannot be said to contribute to a "'legally sufficient evidentiary basis'" for its admission. Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000), quoting Weisgram v. Marley Co., 528 U.S. 440, 454 (2000).

This "gatekeeping function is to be employed for all expert testimony." Engleson v. Little Falls Area Chamber of Commerce, supra at 670-71, citing Kumho Tire Co. v. Carmichael, supra at 141 ("We conclude that Daubert's general holding -- setting forth the trial judge's general 'gate-keeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony

based on 'technical' and 'other specialized' knowledge."); see also, Rule 702, Federal Rules of Evidence, Advisory Committee Notes to 2000 Amendments ("Consistently with Kumho, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful."). It is equally clear, under the holdings of "[b]oth the Eighth Circuit Court of Appeals and the Supreme Court * * * that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not founded on a reliable methodology." Smith v. Rasmussen, 57 F. Supp.2d 736, 766 (N.D. Iowa 1999), citing Kumho Tire Co., Ltd. v. Carmichael, supra at 141.

Thus, "[i]n the final analysis, '[i]n order to be helpful to the trier of fact, the witness must be qualified as an expert, the expert must have a reasonable factual basis for [his] testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue.'" Engleson v. Little Falls Area Chamber of Commerce, supra at 671, citing Kemp v. Tyson Seafood Group, Inc., supra at *2. In making this analysis, we keep in mind the precepts provided by the Supreme Court, in General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997), where the Court observed as follows:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

With the foregoing as our guide, we turn to the opinion evidence which North Star intends to proffer through Rongstad, and consider its relative importance to North Star's claim.

According to his "Biographical Outline," Rongstad owns a retail insurance agency, is chief executive officer of another retail insurance agency, and is the president, and chief executive officer, of a management, consulting, and appraisal company. As related in his Affidavit, Rongstad is prepared to testify, based on his review of the discovery in this case -- and, particularly Owen's deposition -- that "Werlinger's conduct in attempting to obtain insurance to replace the North Star Insurance Company complied with the custom and practice of an agent in the circumstances he was in," and that, given "the absence of information that Westrope did not have authority to bind coverage for Zurich Insurance Co., it was reasonable for Mr. Werlinger to assume that Westrope had that authority." Rongstad Affidavit, at ¶4. He further states that he will testify that, in his opinion -- which is "based upon [his] experience and knowledge of the custom and practice in the

insurance industry" -- Westrope did bind Zurich to coverage for the Schneck loss, if Werlinger's testimony about his contacts with Owen are truthful. Id. at ¶¶4-5. At the Hearing on the Motion, North Star represented that Rongstad's testimony was crucial, because it would provide the relevant context for the factual dispute as to whether Westrope bound coverage to Zurich.

On this Record, we conclude that Rongstad's opinions are inadmissible, under Rule 702, because there has been no showing that his opinion was "the product of reliable principles and methods," as required by that Rule. Instead, North Star seeks to introduce evidence as to how one person who, admittedly, has been in the insurance industry for many years, views a series of communications between an insurance agent, and an insurance broker. Rongstad's "opinion," however, "is connected to existing data only by the ipse dixit of the expert," because he intends to testify that the communication was sufficient to bind Zurich, simply because he says it was sufficient. General Electric Co. v. Joiner, supra at 146. Notably Rongstad does not cite any treatise, any industry code of conduct, or anything outside of his self-professed opinion, to demonstrate that the opinion has any legitimacy. Since Rongstad's opinion is not tethered to any independent authority, were we to allow his opinion, the Jury would have no means of ascertaining the

reliability of Rongstad's views. See, Teska v. Potlatch Corp., 184 F. Supp.2d 913, 920 (D. Minn. 2002).

Further, we are not persuaded that the allowance of Rongstad's opinion evidence, at this late date, would be justified. If we were to allow North Star to disclose its expert report now, we would be obligated to provide the Defendants with additional time to do discovery, and to name a responsive expert, who would then need time to prepare an opinion. While North Star argues that little in the way of additional time would be necessary because Rongstad's report is already complete, and suggests that the Defendants must have considered Rongstad's anticipated testimony to be uneventful, because the Defendants did not name a rebuttal witness even after they were informed of Rongstad's identity, his general area of expertise, and the general subject matter of his expected opinions. As argued by North Star, the "tardy report is not sufficiently prejudicial that exclusion of his testimony is justified." Plaintiff's Extension Brief, at 3.

North Star's argument borders on the fanciful. Although the Defendants may have been aware that North Star initially intended to call Rongstad as an expert, and may have intuitively extrapolated the likely subject matter of his expected testimony, when North Star did not disclose Rongstad's expert report, the Defendants had no reason to believe that North Star still intended to

call Rongstad as an expert, or to name any expert witnesses of their own. "If [North Star] were now allowed to disclose an expert * * * we would be obligated to allow the Defendants to name a responsive expert, whose opinions would also require preparation time," after which, "the parties might well need to depose the respective experts, and lengthy delays would be occasioned -- all for expertise that, under the circumstances of this case -- is unnecessary." Engleson v. Little Falls Area Chamber of Commerce, supra at 672. Such a "delay is neither justified, nor harmless." Id.

Accordingly, given the absence of any showing of good cause to excuse North Star's failure to disclose Rongstad's export report, the delay that would be occasioned by permitting its disclosure at this late date, in conjunction with our conclusion that his opinion is not likely to assist the Jury, we conclude that Rongstad's opinion testimony must be excluded, in accordance with Rules 16(f), and 37(c)(1), Federal Rules of Civil Procedure. Consequently, we deny North Star's Motion to extend the time for its expert disclosures.

B. The Defendants' Motions for Summary Judgment.

Both Westrope, and Zurich, have moved for Summary Judgment in this action. Zurich contends that it was never bound to the Schneck risk, because it never consented to be bound, as West-

rope did not have authority to bind Zurich, and because, even if Westrope did have that authority, Owen never actually bound coverage. For its part, Westrope contends that North Star cannot state a prima facie case of negligence against it, because it owed neither North Star, nor Schneck, any duty to obtain insurance for the Schneck loss. As the resolution of these issues requires different analyses, we take each Motion in its turn.

1. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence

is such that a reasonable Jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992,996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th

Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

2. Zurich's Motion for Summary Judgment. As we have related, North Star claims that Zurich was obligated to reimburse it for the monies North Star paid to Schneck for the fire loss, as Zurich was also bound for that loss. Zurich seeks Summary Judgment by arguing that coverage for the Schneck risk was never bound as to Zurich because, as a matter of law, Westrope had no authority to bind Zurich to that risk.[4] North Star opposes the Motion, and maintains that a genuine issues of material fact exist as to the nature of the relationship between Zurich and Westrope, and as to whether Westrope had implied, or apparent authority, to bind Zurich's coverage.

[4]North Star concedes that Zurich did not, by way of its own actions, bind itself to the Schneck risk, and asserts only that Westrope's actions were sufficient to bind Zurich.

The crux of the issue pivots on the nature of the relationship between Zurich and Westrope and, in particular, on whether Westrope was an agent of Zurich, with binding authority. North Star argues that such a relationship existed, and that the actions of Owen, in the context of that relationship, were sufficient to bind Zurich. Zurich contends that no such relationship existed and, even if it did, Owen's actions were insufficient to bind Zurich. As a result, we necessarily start with a consideration of the relationship between Zurich and Westrope. Only if we find that Westrope had the authority to bind Zurich, need we reach the issue of the effect of Owen's actions.

Our starting place is the distinction, under Minnesota law, between an insurance "broker," and an insurance "agent."[5] This is important, in the resolution of the Summary Judgment Motion because, under Minnesota law, a parol contract will bind an insurance company, if it was within the actual, implied, or apparent authority of the agent purported to have made that contract. See, Morrison v. Swenson, 274 N.W.2d 640, 645 (Minn. 1966). The Minnesota Supreme Court has explained this key distinction, as follows:

---

[5]As our jurisdiction over this action is based on the diversity of citizenship of the parties, Minnesota law governs the substantive issues presented by the Motions. See, Callas Enterprises, Inc. v. Travelers Indemnity Co. of America, 193 F.3d 952, 955 (8th Cir. 1999).

> While it is generally the rule that an insurance company is liable for the torts of its agents when they are acting within the scope of their employment, before that rule can be applied it is essential to determine whether the person claimed to be an agent was, in fact, acting in that capacity. A person who procures insurance for others can be an insurance agent, an insurance broker, or both. The essence of the difference is whereas an insurance agent acts on behalf of a particular insurance company, an insurance broker acts on behalf of the prospective insured. In which capacity a person is acting is a question of fact.

Eddy v. Republic Nat'l Life Ins., 290 N.W.2d 174, 176 (Minn. 1980)[citations omitted].

While an insurance company may be liable for the acts of an insurance agent, an insurance broker "is independently liable to the insured in either contract or tort for failing to procure insurance as instructed," Id. at 177.[6]

This determination, however, involves a question of fact, but one which, we find, is unnecessary to reach. See, Morrison v. Swenson, supra at 132. Zurich has argued that, even if Westrope was its agent, that it was not within Westrope's agency authority -- whether actual, apparent, or implied -- to bind Zurich and, as a result, Westrope could not bind Zurich, for Schneck's loss, as a

[6]Essentially, this provides the basis for North Star's alternative claims against Zurich and Westrope, as North Star contends that, if Westrope could not bind Zurich, because it was not Zurich's agent, then Westrope, as a broker, was independently liable for a negligent failure to procure insurance.

matter of law. While we understand the law to provide that Zurich could not be liable for actions taken by Westrope, unless Westrope was first found to be Zurich's agent, here it is more practical to assume, for argument's sake, that Westrope was Zurich's agent, and then determine whether that agency included the actual, apparent, or implied authority, for Westrope to bind Zurich.

North Star does not assert that Westrope had actual authority to bind Zurich to any coverage, and we find that such an assertion would be without merit, as the Broker Agreement, between Westrope and Zurich, would preclude such authority. See, Plaintiff's Memorandum of Law in Opposition to Defendant Zurich Insurance Company's Motion for Summary Judgment ("Plaintiff's Response to Zurich") at 10("Westrope was acting as an agent of Zurich with apparent and or implied authority when it led Werlinger to believe that it would bind coverage by Zurich."). Article III of that Agreement outlines the "authority and responsibilities of the broker," and provides as follows:

> [Westrope] is hereby authorized by [Zurich] to submit proposals of insurance, subject to the terms and conditions hereinafter set forth. **[Westrope] has no authority to bind coverage on behalf of [Zurich] or to make representations on behalf of [Zurich], unless otherwise agreed to in writing by [Zurich].**

See, Plaintiff's Exhibit A, attached to Plaintiff's Response to Zurich, at 2 of Broker Agreement.

North Star has not presented any such "writing" by Zurich and, therefore, we find no actual authority in Westrope, to bind Zurich.

Accordingly, we turn to the issue of apparent, or implied authority. In considering whether an agent had apparent authority to act, the Minnesota Courts apply the Restatement (Second) of Agency §27. See, Hockemeyer v. Pooler, 130 N.W.2d 367, 375 (Minn. 1964). Under that Section of the Restatement, apparent authority may be found when the following conditions are met:

> (1) the principle must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf; (2) third parties must have [had] actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and (3) proof of the agent's apparent authority must be found in the conduct of the principal, not the agent.

Id. at 375.

As evidence of apparent authority, North Star first points to Westrope's description of itself in the Correspondent Agreement, which it had entered with North Star, and in which it described itself as being in "the business of placing contracts of insurance with various insurers." Exhibit B attached to Plaintiff's Response to Zurich, at unnumbered 1.

Zurich argues, however, and we concur, that the Correspondent Agreement is irrelevant to the issue of apparent authority. The Restatement requires that "proof of the agent's apparent authority

must be found in the conduct of the principal, not the agent." Hockememyer v. Pooler, supra at 375; see also, Plymouth Foam Prods., Inc., 944 F. Supp. 781, 785 n. 2 (D. Minn. 1996), aff'd, 120 F.3d 153 (8th Cir. 1997). Thus, any statements made by Westrope to North Star cannot constitute indicia of apparent authority, since they were not made by the principal. North Star's argument, that statements made by Owen led Werlinger to believe that she could bind Zurich, suffer from the same shortcoming. See, Four D, Inc. v. Dutchland Plastics Corp., 2003 WL 1842838 at *4 (D. Minn., April 8, 2003)("[A]pparent authority analysis is based on conduct of the principal rather than the conduct of the agent, see Vacura v. Haar's Equipment, Inc., 364 N.W.2d 387, 391 (Minn. 1985)," as "'[n]o agent by his own act can create evidence of authority.'"), quoting West Concord Conservation Club, Inc. v. Chilson, 306 N.W.2d 893, 897 (Minn. 1981). Whatever Owen's actions were, they were legally insufficient indicia of apparent authority.

North Star has also asserted, however, that Zurich "clearly held Westrope out as an agent or as an entity permitted to act on its behalf by using Westrope's services to obtain applications for insurance," and by allowing "Westrope to solicit business on its behalf." In this instance, North Star is pointing to actions taken by the principal, and not by the agent. However, we cannot accept that the asserted actions provide any evidence that Zurich held

Westrope out as an agent with binding authority. It is plain, under Minnesota law, that an insurance broker may be an insurer's agent for one thing, but not for another. North Star's claims concern Westrope's ability to bind Zurich in coverage, and not Westrope's capacity to solicit business, or accept applications on behalf of Westrope, for further processing by Zurich. Thus, North Star must show some action, which was taken by North Star to hold Westrope out not just as an agent, but as an agent with binding authority.

North Star has argued that the Broker's Agreement, between Zurich and Westrope, evidences such authority, and it places considerable reliance upon the requirement that Westrope "[p]ay all premiums due on insurance coverage bound or written whether or not collected by the Broker" which, in North Star's view, would be meaningless, unless the "coverage bound" was accomplished by Westrope. This argument, however, ignores the express language of the Broker's Agreement, that we have previously recited, which denies Westrope the authority to bind coverage on behalf of Zurich. Furthermore, even if this provision had the effect that North Star attributes to it, the Restatement requires that a person have "actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf." Hockemeyer v. Pooler, supra at 375. North Star

has not presented any evidence which so much as suggests that, at the relevant time, Werlinger had any knowledge of the contents of the Broker Agreement.

Accordingly, we find no evidence from which to reasonably infer Westrope had the apparent authority to bind Zurich on matters of insurance coverage. Minnesota law has always placed the burden of reasonableness, and diligence, upon any person dealing with an agent to examine whether that agent has the authority to complete the proposed act. See, Truck Crane Serv. Co. v. Barr-Nelson, Inc., 329 N.W.2d 824, 827 (Minn. 1983); West Concord Conservation Club Inc. v. Chilson, supra at 896 ("Every person who undertakes to deal with an agent is put on inquiry and must discover whether the agent has the authority to complete the proposed act."). Werlinger had no actual knowledge that Zurich held Westrope out as an agent with binding authority, and he could not presume, by the absence of a statement by Owen which denied authority, that such authority existed. "The record is bereft of the sort of 'statements, conduct, lack of ordinary care, or other manifestations of the principal's consent' from [Zurich] 'whereby third persons [would be] justified in believing that the agent [was] acting within his authority.'" Four D, Inc. v. Dutchland Plastics Corp., supra at *4, quoting McGee v. Breezy Point Estates, 166 N.W.2d 81, 89 (Minn. 1969). As a consequence, we find that, even if Westrope was acting

as Zurich's agent, Westrope lacked apparent authority to bind insurance coverage for Zurich.

We proceed, therefore, to the implied authority question. "Implied authority includes powers that are directly connected with or essential to carry out the agent's expressly delegated duties." Rehnberg v. Schranck, 2001 WL 1132203 at *2 (Minn.App., September 25, 2001), citing Hornblower & Weeks-Hemphill Noyes v. Lazere, 222 N.W.2d 799, 805 (Minn. 1974). Here, according to the express terms of the Brokers Agreement, Westrope was expressly authorized only "to submit proposals of insurance subject to the terms and conditions" set out in the agreement. The authority to bind Zurich in coverage was neither directly connected with, nor essential to, the carrying out of those duties -- a fact that is abundantly clear from the express denial of any such authority, which is memorialized in the very next sentence of the Broker Agreement.

In sum, we conclude that the Record does not demonstrate that Westrope had the authority -- actual, apparent, or implied -- to bind Zurich on matters of insurance coverage. As such, Zurich is entitled to Summary Judgment because, as a matter of law, it is not liable for the actions undertaken by Westrope, which are beyond the scope of any agency authority vested in Westrope. Consequently, we grant Zurich's Motion for Summary Judgment.

3. Westrope's Motion for Summary Judgment. In its Complaint, North Star has alleged that Westrope was negligent in failing to properly place insurance coverage for Schneck. Westrope moves for Summary Judgment on the ground that North Star has failed to state a prima facie case of negligence against it. Westrope asserts that it owed no duty to North Star, or to Schneck, to obtain replacement insurance for Schneck, and therefore, Westrope could not have breached a duty it did not bear. See, Johnson v. Urie, 405 N.W.2d 887, 991 (Minn. 1987)(elements of a prima facie case of negligence are the existence of a duty, breach of that duty, that the duty was the proximate cause of the plaintiff's injury, and damages). Instead, Westrope contends that it was Legend -- through Werlinger -- who owed that duty to Schneck, as Schneck's insurance agent. Alternatively, Westrope asserts that, even if it had owed some duty to North Star, or to Schneck, to find replacement insurance for the Schneck risk, it did not breach that duty because insurance was in place at the time of the loss.

While North Star generally concedes that Westrope owed it no duty to procure replacement coverage for the Schneck loss, it argues that, under the unique facts of this case, Westrope did owe it such a duty. According to North Star, because Schneck assigned its rights to North Star, and because North Star paid for the Schneck loss, North Star is entitled to pursue the parties who

caused that loss by their negligence, or wrongful conduct. We conclude, however, that Westrope is also entitled to Summary Judgment.

Even if Westrope could be found to owe some duty to Schneck to find Schneck replacement insurance, and even if Westrope were found to have breached that duty, Schneck could not prove any injury, or damages, caused by Westrope. At the time of the loss, Schneck was fully insured by North Star -- at a premium lower than it would have had to pay Zurich -- and Schneck benefitted from full coverage as to that fire loss.[7] Thus, since Schneck was made whole, it could not bring a viable action, for negligence, against Westrope. See, Dalton v. Dow Chemical Co., 280 Minn. 147, 153, 158 N.W.2d 580, 584 (Minn. 1968)("An action for negligence cannot be maintained, nor does the statute of limitations begin to run, until damage has resulted from the alleged negligence."). Consequently, as North Star's claim against Westrope is an indirect one, obtained only by Schneck's assignment of rights to North Star, North Star could, as a matter of law, have no better claim against Westrope than Schneck held, and Schneck held no viable claim against Westrope.

---

[7]Our review of the Record reveals no evidence that Schneck would have had broader, or greater coverage for its loss had it been insured by Zurich, rather than North Star, at the time of that loss.

Nonetheless, North Star has argued that, because it paid for the Schenck loss, it should be entitled to pursue the party that caused that loss, under a subrogation theory, which "rests on the maxim that no one should be enriched by another's loss." Olson v. Blesener, 633 N.W.2d 544, 547 (Minn.App 2001). While Northstar advances a gloss of the law of subrogation that is, quite technically correct, that gloss bears no relationship to the facts of this case, as evidenced by the facts presented in Olson. There, an employer sued a third-party to recover for the lost wages that the employer had paid to an employee, who was injured by the third-party tortfeasor. The employee was not covered by workers' compensation and, as such, could have recovered lost wages in an action against the third-party tortfeasor. Under those facts, the employer, who voluntarily paid the benefits, was entitled to recover those payments from the third-party, under a theory of subrogation.

Analogizing those facts to this case, however, would not allow North Star to pursue a claim against Westrope, in subrogation, based on the alleged failure of Westrope to secure alternate insurance for the Schneck loss. Rather, the reasoning in Olson would allow North Star to pursue a claim against a tortfeasor, who had caused the fire that damaged the Schneck property, and for which North Star had paid the insurance benefits. Even if Westrope was negligent, as North Star suggests, in not finding additional

coverage for the Schneck loss, that negligence was not the cause of the fire damage to the Schneck property. While, conceptually, the failure to find an alternate source of insurance coverage caused direct damage to North Star, as North Star had to bear that damage alone, nevertheless, as North Star admits, and is compelled to admit, Westrope owed it no direct duty to secure an alternate insurance policy, and therefore, North Star's claim arises from a duty that Westrope did not owe to North Star, and from a loss which vests, in North Star, no subrogation rights as to Westrope.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendant Westrope & Associates' Motion for Summary Judgment [Docket No. 48] is GRANTED.

2. That the Defendant Zurich Insurance Company's Motion for Summary Judgment [Docket No. 30] is GRANTED.

3. That the Plaintiff's Motion for an Extension of Time for Disclosure of Expert's Report [Docket No. 39] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE